Good morning, Your Honors. May it please the Court. Kevin Bovet for the Petitioners, Carlos and Bilem Navarro. Your Honor, I think that the, Your Honors, I think the purpose of the Barahona-Gomez Settlement Agreement was to protect that class of aliens who are eligible for special deportation, but whose cases were continued to dates after the new immigration law went into effect. And looking at the class definition, there are five requirements. There are only two at issue in this case, number three and number five. In this case, the petitioners were scheduled for their individual hearing on the merits between February 3, 1997, and April 1, 1997. The scheduling hearing occurred on March 3, 1997. The individual hearing on the merits occurred on April 1, 1997. So really, the hearing, the scheduling hearing and the continued hearing took place within the parameters of paragraph three of the class definition. What hearing was continued? And I understand we're going to repeat a dialogue I just had, perhaps, but I can't say that I understand what merits hearing was continued. Well, I don't say that, I don't think it says paragraph five of the, paragraph five says, does not say that the merits hearing was continued. It says that the hearing, the hearing were continued. Well, what is, I think it's paragraph one, number one at least. Yes, sir. And it says, the first part is the scheduling part, and I will acknowledge the word scheduling can be read in a couple of different ways, but it says scheduled a merits hearing, and then later it says, and the hearing, which I think ordinarily would refer to the merits hearing, since that's the only other hearing that's been referred to in the paragraph, was continued until after April 1. I'll disregard for a moment the after April 1, because, in fact, if the law was in effect April 1, it should be on or after. Okay. But I don't see any continuance. Well, Your Honor, I read the settlement as requiring a two-hearing, a scheduling hearing and a merits hearing. And I think when the settlement agreement speaks of the continued hearing, it could refer to a continued merits hearing, but I think it also could refer to a the scheduling hearing, the hearing that the first hearing was continued until the merits hearing. And so in effect the preceding, I mean, the interpretation you just offered would be the case if instead of the second use of the word hearing, it was preceding or matter or case. But the hearing seems to refer, seeing as the word hearing is used earlier in the same sentence, seems to refer to the merits hearing, suggesting you had one date and that date was changed. And in this instance, no date was changed, was it? That's true. That's true, Your Honor. But it doesn't say that the merits hearing was continued. And that is certainly one reading of the settlement agreement is that the merits hearing must be continued from a pre-IRR to a post-IRR date. But I think that the purpose of the settlement agreement was to protect aliens that were eligible pre-IRR and then who either cases continued to post-IRR. If we take a step back, I mean, the definition of the class, which is also pertinent, tells us what this is supposed to be about. Persons who have had or would have had suspension of deportation hearings conducted before April 1 within the jurisdiction of the Judge Crockery letter and so forth. Is there any basis for concluding that your clients would have had a hearing before April 1 but for that letter? As a result of the letter, they didn't have a hearing that they would have had otherwise. Well, Your Honor, I guess then the question is why did the judge continue the merits hearing to April 1st? And so that, I guess, perhaps is a result of the CREPI memo and this policy of moving cases or reserving decision in cases until after the new law goes into effect. Well, the, I mean, it wasn't really much of a delay. You heard the dialogue I had before. The two cases next to each other, there's a big disparity in terms of what the time gap is between the date of scheduling and the date of the actual merits hearing. True. In the other case, it was like eight months. In this case, it's, what, four weeks or something like that. Yes. Which, you know, we see a fair number of these cases. That doesn't seem long to me. It doesn't, Your Honor. And I think that's a, but I think that's a, I think legally it doesn't really matter. I think that if you can, as long as it, if it occurred April, on April 1 or April 2, it seems to be the same thing. There was a pre-IRIRA eligibility and then a post-IRIRA. If you read the agreement that way, then you might as well say anybody whose dates were scheduled between February, I think, 13 and April 1. Because after that, you're saying, you know, they could have squeezed a hearing in there if they'd really wanted to. And you're using continued to refer to really the same case, not the moving around of any hearing. So if that had been the intent of the agreement, why wouldn't it simply say anybody who had a scheduling hearing between February 13 and April 1 and who subsequently had a hearing on a cancellation application, you're in here, you're covered? It doesn't say that. It doesn't say that. It certainly could say that. And perhaps for the preceding case, that would be the better reading. Fortunately, for this, this could just be, the Navarro case just could be sui generis. And because both the scheduling hearing, the scheduling hearing occurred between February 13 and April 1, 1997, and the merits hearing occurred on that same day. Landing on April Fool's Day may make the case different. Well, that's what this case could be, just be a unique case and maybe not deserve even publication, just an ameliorative decision on the facts of this case, unpublished. But had it occurred one day earlier, then the petitioners would have been eligible. And this goes, I think, to the point of the 28J letter, which I did submit to the court, and citing the Lopez-Castellanos and the St. Cyr cases, because the Lopez-Castellanos and St. Cyr cases seem to suggest that Section 309C5 of IORIRA might indeed have an impermissible retroactive effect, as applied to these petitioners, because they were eligible for special deportation at the time they acknowledged service of the Osh-Chukas, at the time they conceded their deportability from this country, at the time they filed their applications for the special deportation. And I think under Lopez-Castellanos and St. Cyr, those cases suggest that the court might perhaps revisit the Rahm v. Ines decision, which said that these stop-time rules were meant to be, can be applied retroactively, and perhaps... I think that I wrote the, I think I wrote Rahm. Yes, Your Honor. And even if I now thought it was wrong, though, our panel can't revisit that decision. Only an end-bank court could. Well, I just, that's true. I'm just pointing out that it seems like the Supreme Court's decision in Lopez-Castellanos, I mean, in St. Cyr, as adopted by Lopez-Castellanos, it seems to me that under that legal regime, the holding of Rahm might be, could somehow be revisited. I agree, not by this panel, I'm just mentioning it. And it may be, perhaps that should perhaps suggest that a remand would be appropriate to the board, or perhaps supplemental briefing on the issue. The government's point about the alternative, or the dispute resolution in the district court, that's also a good point, perhaps remediation of this case and the preceding case. I think that there may be a dispute resolution mechanism in the district court. I don't know that it's the exclusive one, but that is certainly a possibility. But I think under the... Well, could your client, is there any legitimate way that we could get your client and the government before the district court to discuss what the settlement agreement means or should say? I would think that this court could transfer the case to the district court, and I don't know the specific statutory basis, but I'm sure there is one, just like the court can transfer a habeas sometimes from district court to circuit court. And that might be a way to resolve it, to determine the parties. But it seems to me that under the terms of the agreement, and I understand that Judge Clifton's point about the he seems to feel that the merits hearing has to have been continued, but that's not what the settlement agreement says. It says that the hearing was continued until after the effective date of our RARA. Were you there for the immigration, Judge? I was not, unfortunately. I came into the case after the denial at the Board of Immigration Appeals on the appeal, and then on the appeal to this court, but denial, I believe, under Rahm, and then a motion to reopen under Barahona Gomez. But I was not before the immigration judge, so I couldn't tell you, for example, why didn't the immigration judge schedule the hearing for March 31, 2000? March 31, 1997, I don't know. Well, was your client represented at that time? Yes, he was, Your Honor. Yes, they were, Your Honor. By whom? I believe it was Mr. Jorge Cabrera. He was the attorney of record in the record of proceedings. But it does seem to be a very, as you said, an April Fool's type of case, but it may indeed be the only case that could fall under the interpretation that the Petitioners urged the Court to accept, that the case was scheduled for the individual hearing, and that that hearing, the case was scheduled for the merits hearing between February 13 and April 1, and then that hearing was continued until after the effective date of our RARA. And that is the interpretation that the Petitioners asked the Court to accept. And with that, I would submit, Your Honor, Your Honors. How does that lawyer spell his last name? I believe, Your Honor, it's C-A-B-R-E-R-A. C-A-B-R-E-R-A. Yes, sir. Well, are you suggesting that we send this case to our mediation program? Well, it could. Well, it seems that the government's arguments are very clear, and its position is very solid, or very hard, it appears to me. I don't know that, but at the same time, this might be, because it's only one case, maybe it would be one that, I mean, what harm is it in a case of a doubt? Supposedly, it's an ameliorative statute, and the duty should be resolved in favor of the aliens. This is a case where the judge made no other findings, I believe, on the Goodmore character or hardship but I represent to the court that there are no criminal issues or other bars. Because of the unique nature of this case. Are you saying this is the only case that landed on April 1? Well, I believe so, Your Honor. Otherwise, the court would have seen it by now. The deadline has passed for asking for eligibility under Barahona-Gomez, and being that it is so unique, I mean, perhaps in this case, maybe even the government would stipulate to the relief. I don't know. Thank you, Your Honor. I'll try to be brief, since we've already really covered a lot of the issues in this case. I think that where this case, again, fails is on the second prong. Because even if the first portion of the settlement agreement is susceptible to reading that simple act of scheduling is good enough, we don't have a delay of the merits hearing. And so I don't know if mediation is the right thing to do, because if all of that provision of the settlement agreement was susceptible to a difficult interpretation, then we should go into dispute resolution, which would require negotiation with EOIR, and then notification of the district court. But since the second prong of it is going to fail, ultimately, I don't think necessarily mediation is the right answer. I also want to make the quick point. Mr. Verbe, if I may ask a question on this dispute resolution. Putting aside whether it's what we ought to do, could we somehow ship this appeal to the district court to assess the meaning of the settlement agreement, whether the language has to be reformed or what the language was intended to cover before we address the issues? I have seen a lot of powers exercised by this court, but I'm not — I can't think of a statutory jurisdictional mechanism that would allow this court to actually transfer this case directly to the district court. I mean, I think the best this court could do was maybe hold the case in abeyance and direct the parties to use the dispute resolution process. Okay. So maybe that's what you meant, or we could stay our proceeding and give the parties a chance to use the dispute resolution process in the district court. You could, Your Honor, but I think in light of — especially with respect to what Judge Clifton was bringing out, there is no ambiguity that needs resolution with respect to the second prong. And so I'm not so sure that's the right course to do. I also want to make one point. The ambiguity, I guess, would be whether hearing — Scheduling is good enough, yes. Well, the first one is scheduling. The second one is whether hearing equates to any matter in the proceeding. I confess that I don't see that as being a likely interpretation, but I understand the argument. And I do, too, Your Honor. So if the district court's in a better position because she helped craft this thing, and I suspect that's probably what happened, then it's a legitimate suggestion. That is one way to pursue it. Another point has been made about the immigration judges knowing that the law was going to change and that they were scheduling these things on purpose to put these aliens behind the eight ball with respect to the change in the stop-time rules. I'd ask the Court, when they consider that argument, especially as was made in the previous case, and I apologize, I'm speaking out of turn to bring it up in this case, but I think it was alluded to also. Section 309c5 of ARERA was very confusing at the time it came out. And I'd like you, the judges, to look very quickly at those words sometime when you're back in chambers, because it says, Notices to appear issued on or after the date of — on or before or after the date of the enactment of ARERA. There were no notices to appear issued before. And this resulted in quite a bit of confusion that led to the statute actually being amended and then decisions coming out later that actually said, wait a minute, it just applies retroactively across the board. But as it stood around the time of the creppy memo, it's not so easy to say judges knew what the law was going to be on April 1st, because the wording of that statute did prove to be very, very confusing and there were some problems with it. So I think I would be a little leery of jumping to the conclusion that immigration judges knew what the law was going to be and placed people behind the eight ball on purpose. Well, can you send me a little note on that, too? Absolutely, Your Honor. Do you want it before I leave, or would you prefer if I draft up a letter and send it to you on Monday? Which would you like, sir? Whatever you want. Aye, sir. I'll take that when I get back to my office. It's probably an easier way. So, well, that's interesting. So you have this provision that's confusing and the statute has to be amended and then it goes retroactive and some people rely on it. And that was ultimately why the Barahona class was, I think, created, because even though all of that was eventually corrected, there was still a group of people that were really caught in an odd situation in an odd period, before the law, but were denied their merit hearing. Their merit hearing was pushed back because solely of the corrective memo. And I think those are the people that need to be protected, not the people who are on the fringe of that. How many of these cases do we have coming up? These are the first two that I've handled in several years, but my office is rather large and we don't really able to check on everybody. I don't know if there's a few more out there. I don't remember one. Like I said, it's a very narrow group of people. I was also wondering if, with these two cases, if the universe out there is that there are hundreds of people similarly situated or a few or none, you know? It seems like a high. Well, we could look in our inventory. That tells us about similar cases. Let's see. I don't, you know, we keep an inventory of all these cases. I don't, all it says is these cases involve members of the class who may be covered by the injunction and Barahona, Gomez versus Reno. It gives us a citation. And, you know, most of the time we get a whole string of cases. We may get 20, 30, 40, you know, because we keep track of all this. And that's usually based on a keyword, Barahona. And I think this is maybe. I don't know how they do it, but, you know, they go through issues. They go through issues. My guess is. Well, here, I've got this one here. It says these cases involve members of the class who may be covered by the injunction and Barahona, Gomez, not yet calendar, Molina versus Gonzalez. I think maybe that's it. Navarro, Gonzalez. That's coming up. And Arenas versus Gonzalez. My guess is it's a fairly narrow class of aliens. Yeah, that's all. And this was dated 11-4-05. I think we can probably tell from our documents, you know, our clerk's office work, that there aren't a lot of other appeals in our system in the Ninth Circuit that have the same issue. But I'm not sure we could tell how many motions to reopen on similar grounds are kicking around the BIA or IJs. I don't know if we would have any way to know that. Okay. See how advanced and efficient we are in the Ninth Circuit? I mean, I know we frighten people because of that. It's a kinder, gentler court, Your Honor. It's a kinder, gentler court, Your Honor. We just, we're well organized. We have a wonderful clerk's office. If there are no further questions, I'll just ask the petition for review, in this case, be denied as well as in the first case. Thank you, Your Honor. All right. May I make one comment, Your Honor? Yeah. Just to say that I believe there will be very few cases. You know, I thought maybe you were going to give me the Boy Scout oath. Two-finger. I'm not sure about that. That's the Girl Scout oath. Go ahead. I think there will be very few cases because the deadline for filing these motions to reopen on Baranjona-Gomez has already been long gone. And I think that I believe Judge Clifton had mentioned the ambiguity in the statute. I hope I'm not misstating it. But because it is an immigration case, all ambiguity should be favored, should be construed in favor of the alien. And I would ask the court on this very unique case to please grant the petition. Thank you, Your Honor. All right. I'd just like to, sorry, Judge Gould, I'd like to just take a short recess. It's fine with me. I was just going to ask for one. All right. That's great. Read your mind.
judges: Pregerson, Gould, Clifton